2024 IL App (2d) 230486-U
No. 2-23-0486
Order filed February 13, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-CF-991 |
| | ) | |
| TAMIM SAMADI, | ) | Honorable |
| | ) | David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) The State offered evidence to establish why no conditions of release could mitigate defendant's alleged dangerousness; (2) trial court's written findings, read in conjunction with its oral pronouncement, were sufficient to apprise defendant of the reasons for its ruling that no conditions of pretrial release could mitigate defendant's dangerousness and to accommodate review under the Act; and (3) trial court's finding that no conditions of pretrial release could mitigate defendant's alleged dangerousness was not against the manifest weight of the evidence.

¶ 2   Defendant, Tamim Samadi, appeals the October 27, 2023, order of the circuit court of Kane County denying pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), commonly known as the Pretrial Fairness Act (Act).

See Pub. Acts. 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023).[1] On appeal, defendant raises three principal issues. First, defendant argues that the State failed to meet its burden of proof where it did not offer evidence or explain why no conditions of pretrial release could mitigate his alleged dangerousness. Second, he argues that the trial court did not make sufficient written findings to support the conclusion that no conditions of pretrial release could mitigate his alleged dangerousness. Third, he argues that the trial court erroneously held that he could not be released on electronic home monitoring because he is homeless. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      The limited record before us discloses that on May 13, 2023, defendant was involved in an altercation with Leonard Hall at a train station in Elgin. Defendant was arrested the same day and subsequently charged in Kane County case No. 23-CF-991 with three counts of armed violence (class X), one count of aggravated battery causing great bodily harm (class 3), two counts of aggravated battery on a public way (class 3), two counts of aggravated battery while using a deadly weapon (class 3), one count of unlawful possession of a weapon by a felon (class 2), and one count

---

[1]The Act has also been referred to as the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act. However, neither the titles "Pretrial Fairness Act" nor "SAFE-T Act" is official, as neither appears in the Illinois Compiled Statutes or the public acts. *Rowe*, 2023 IL 129248, ¶ 4 n.1.

of unlawful use of a weapon (class 4).[2] Defendant was unable to post the cash bond imposed by the trial court, so he remained incarcerated.[3]

¶ 5     On October 17, 2023, defendant filed a "Motion for Reconsideration of Pretrial Release Conditions" (Motion). The following day, the State filed a "Verified Petition to Deny Defendant Pretrial Release" (Petition). In its Petition, the State contended that defendant's pretrial release should be denied pursuant to section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2022)) (felony other than a forcible felony), section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2022)) (forcible felony), section 110-6.1(a)(6)(O) of the Code (725 ILCS 5/110-6.1(a)(6)(O) (West 2022)) (unlawful use or possession of weapons by felons), and section 110-6.1(a)(6)(W) of the Code (725 ILCS 5/110-6.1(a)(6)(W) (West 2022)) (aggravated battery with a deadly weapon other than by discharge of a firearm). As additional grounds upon which defendant should be denied pretrial release, the State cited (1) defendant's criminal history in Illinois, which included convictions of attempt (first degree murder) (2006), disorderly conduct (2021), and aggravated battery to a peace officer (2021) and (2) defendant's criminal history in California, which included convictions of reckless driving (2014), battery of a spouse (2017), and exhibiting a deadly weapon (2018). The State also noted that defendant was on probation for his conviction of aggravated battery to a peace officer when he was alleged to have committed the offenses at issue in the present case. The State indicated that it would provide a proffer at the hearing on its Petition pursuant to section 110-6.1(f)(2) of the Code (725 ILCS 5/110-6.1(f)(2) (West 2022)).

_____

[2]We do not cite the statutory provisions pursuant to which defendant was charged, because the parties do not provide them and the charging instrument is not included in the limited record filed on appeal.

[3]The amount and conditions of the bond, if any, do not appear in the record.

¶ 6    The State attached to its Petition a sworn synopsis (Synopsis) drafted by the Elgin Police Department. The Synopsis provides in relevant part as follows. On May 13, 2023, Hall was sleeping on a bench at the train station. Because he had been previously stabbed, Hall keeps a pair of scissors on his person for protection. Hall woke up upon hearing defendant kicking the lid of a garbage can. Hall claimed that defendant was also speaking into a phone stating, "you got me out here," "why you kick me out," and "I kill you." Hall asked defendant to stop making noise. Defendant approached Hall and continued to kick the garbage can lid. Hall then stood up and again asked defendant to stop kicking the lid. Defendant pulled out a knife from his pocket and stated "I kill you motherf***er." After Hall saw defendant take out the knife, he displayed the pair of scissors. Hall told the police that defendant swung the knife first. Hall unsuccessfully attempted to dodge the knife and sustained a cut on his left hand. During the altercation, defendant exclaimed approximately 10 times, "I'm going to kill you; you dead." Hall then swung his scissors at defendant, cutting him on the chin. Hall dialed 911. Defendant then walked away, dropping the knife as he left. Due to the severity of the injury, Hall required surgery. Hall acknowledged that he has mental health issues, including bipolar disorder.

¶ 7    The Synopsis further provided that during an interview at the police station, defendant initially stated that although he had been attacked three or four times in the past, he was unarmed at the time of the altercation with Hall. According to defendant, Hall approached him and told him to be quiet or he would "chop his neck off." Hall produced a knife and began swinging at him. Defendant later stated, "Yeah, I got knife [*sic*]. I threw it away. Black knife. I stab [*sic*] him, yeah I did. Because he stab [*sic*] me." Defendant then advised that he stabbed Hall in the hands because he thought he saw Hall holding a knife. Defendant further indicated that Hall pulled out a knife first, which led to defendant producing his own knife and stabbing Hall. Defendant added that he

felt threatened because of Hall's size and that he did not remove his knife from his pocket until after he was struck in the face.

¶ 8    On October 27, 2023, the trial court held a detention hearing. The State proceeded by proffer and sought to admit the Synopsis. The State then argued that defendant was charged with "numerous offenses" which are eligible for pretrial detainment, including armed violence, aggravated battery with a deadly weapon, aggravated battery causing great bodily harm, and unlawful possession of a weapon by a felon. The State also referenced defendant's criminal history and noted that defendant was on probation at the time he allegedly committed the offenses at issue. The State further noted that failure-to-appear warrants had been issued for defendant in October 2022 and April 2023. The State argued that defendant "stabbed essentially a stranger and had a knife fight with a stranger that he instigated in a public area of a public train station." The State contended that defendant's actions were "very concerning for public safety" and "pose a significant threat to the safety of any person in the community in general *** as well as the named victim." Further, the State argued that defendant is not capable of following court orders as evidenced by the facts that he "pick[ed] up this new offense" while on probation and "possessed a weapon that he was prohibited from possessing as a convicted felon."

¶ 9    In response, defense counsel argued that the Synopsis was insufficient to meet the State's burden of proof that defendant committed the charged offense. Defense counsel contended that this was a "he said/he said" case. Both parties were injured and defendant reported that he was "approached first and swung at first." Defense counsel introduced a photograph of defendant's injury and noted that defendant had been hospitalized. Defense counsel also alleged that Hall had "his own history of violence," including convictions of domestic violence (2015), battery (2017 and 2019), and replica firearms and ammunition (2017). In addition, Hall was charged in another

county with battery in 2023. Defense counsel also introduced a disclosure from Hall obtained by the State. Defense counsel argued that the disclosure counters any argument that Hall is at risk or in fear of his safety. In the disclosure, Hall requested that the State release defendant, opined that defendant did not mean any harm, and indicated that defendant was not "in his right state of mind." Defense counsel indicated that both defendant and Hall were homeless. He asserted, "[i]t's just a completely different reality that these individuals live in from day to day." Defense counsel then noted that jail personnel were working to find housing or shelter for defendant if he were to be released. Defense counsel reiterated that the State had not met its burden on the commission of the offense, noting this would be a self-defense case. He also argued that the State did not meet its burden of establishing that defendant poses a real and present threat to any person or the community or that any condition or combination of conditions could not mitigate any such threat.

¶ 10　　The trial court ordered defendant detained. The court determined that the State had proven by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses of armed violence and aggravated battery causing great bodily harm and that defendant poses a real and present threat to the community based on the specific articulable facts. The court found the Synopsis to be "very detailed" and noted that the offenses involved a random attack on an unknown individual in a public place. As such, the court found that the public at large would be endangered by defendant's release. The court further concluded that no condition or combination of conditions can mitigate the real and present danger posed by defendant. The court based this latter finding on the fact that defendant "was on probation at this time, being supervised on probation, and he still committed these offenses, or is alleged to have committed these offenses."

¶ 11    The trial court entered a preprinted detention order on the same day of the hearing. On the form, the court checked boxes to indicate that it found by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a detainable offense pursuant to section 110-6.1(a) of the Code (725 ILCS 5/110-6.1(a) (West 2022)); (2) defendant poses a real and present threat to the safety of any persons or the community at large; and (3) no condition or combination of conditions set forth in section 110-10(b) of the Code (725 ILCS 5/110-10(b) (West 2022)) can mitigate the real and present threat to any persons or the community at large. The court further explained in the written order that its finding that defendant committed a detainable offense is based on "clear and convincing evidence of non-probationable felonies." Its finding that defendant poses a real and present threat to the safety of any persons or the community is based on "random attack in public with a deadly weapon shows defendant to be erratic and unpredictable and dangerous," defendant was on probation for a class two aggravated battery to a police officer, and defendant had a prior attempt (first degree murder) conviction. Finally, the court's finding that less restrictive conditions would not assure safety to the community is based on the fact that defendant was "[o]n probation—failed to comply with terms—homeless so EHM [electronic home monitoring] unavailable." On November 9, 2023, defendant filed a form notice of appeal. The Office of the State Appellate Defender was appointed to represent defendant in this appeal and filed a memorandum in support thereof. The State subsequently filed a memorandum in opposition to the appeal.

¶ 12                                    II. ANALYSIS

¶ 13    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). In Illinois, all persons charged with an offense are eligible for pretrial release. 725

ILCS 5/110-2(a), 110-6.1(e) (West 2022). Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations (qualifying offenses). 725 ILCS 5/110-2(a), 110-6.1 (West 2022). For most of the qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed the offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 14　We review a trial court's decision to detain a defendant using a two-part standard of review. We apply the manifest-weight-of-the-evidence standard to the trial court's factual determinations, including whether the proof is evident or the presumption great that a defendant has committed a qualifying offense, whether a defendant poses a threat, and whether any conditions would mitigate that threat. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if a conclusion opposite that to the trial court's is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. *People v.*

*Williams*, 2022 IL App (2d) 200455, ¶ 52. Questions of law and the construction of statutes are reviewed *de novo. People v. Swan*, 2023 IL App (5th) 230766, ¶ 16.

¶ 15    Before proceeding further, we note that defendant raised several arguments in his form notice of appeal. See Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023) (prescribing form for notices of appeal under article 110 of the Code (725 ILCS 5/art. 110 (West 2022)). First, defendant argued that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged because the Synopsis was insufficient to establish that he committed the offenses and he presented evidence that he acted in self-defense. Second, defendant argued that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. Again, defendant argued that the Synopsis was insufficient to support this element. He also claimed that Hall was not in fear of his safety as evidenced by the disclosure obtained by the State. Defendant further disputed that he was a danger to the community, asserting that he was provoked and merely defended himself. Third, defendant argued that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or defendant's willful flight. In support of this last argument defendant contended that the court "failed to consider a no-contact order, a stay away order, or EHM."

¶ 16    In his memorandum on appeal, defendant only addresses the trial court's ruling with respect to the third argument raised in the notice of appeal. Consequently, as to the arguments defendant raised only in his notice of appeal, we do not reach them, because they were not also raised in his memorandum on appeal. Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023)

provides that an appellant either may stand on his or her notice of appeal or may, but is not required to, file a memorandum. Further, although Rule 604(h), as amended by the Act, provides a new procedure for pretrial release appeals, the long-standing principles in Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) and related case law regarding appeals still apply. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 12. Acknowledging these changes in the law and the foregoing long-standing principles, the Fifth District recently held, in *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶¶ 41-42, that if a memorandum is filed, it is the controlling document for identifying the issues or claims on appeal, except in limited circumstances such as to determine jurisdictional issues. In *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22, we adopted the approach set forth in *Forthenberry* and held that the filing of a memorandum reflects that an appellant has elected to abandon any arguments that were raised in his or her notice of appeal but not also pursued in the memorandum. Accordingly, with limited exception, we will not reference the notice of appeal to address arguments that are not also raised in the memorandum. *Rollins*, 2024 IL App (2d) 230372, ¶ 22.

¶ 17    Thus, in this case, we will address only the three issues identified in defendant's memorandum. Those issues are as follows. First, defendant argues that the State did not meet its burden to show that no conditions of release can mitigate his alleged dangerousness. Second, he argues that the trial court did not make sufficient written findings to support the conclusion that no conditions of release could mitigate defendant's dangerousness. Finally, he contends that the trial court erroneously held that he could not be released on electronic home monitoring because he is homeless.

¶ 18                                         A. State's Evidence

¶ 19    We first address defendant's contention that the State did not meet its burden to show that no conditions of release can mitigate his alleged dangerousness. According to defendant, the State did not offer any evidence or explanation as to this element. We disagree.

¶ 20    The Act instructs that, in determining whether a specific threat could be mitigated through the imposition of conditions of pretrial release, the trial court is to consider: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, (4) the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by the defendant's release, and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a)(1)-(5) (West 2022). The history and characteristics of the defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings" as well as "whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2022).

¶ 21    Although not expressly presented in support of a claim that no conditions of release can mitigate defendant's alleged dangerousness, the State's proofs did address during the detention hearing many of the statutory factors cited above. As to the nature and circumstances of the offenses, the proffer showed (as the State argued) that defendant "stabbed essentially a stranger and had a knife fight with a stranger that he instigated in a public area of a public train station." As to the history and characteristics of defendant, defendant's criminal history included various

offenses, including a 2006 attempt (first degree murder) conviction for which he was sentenced to seven years in jail. In addition, defendant was on probation for aggravated battery to a peace officer at the time he committed the offenses at issue and failure-to-appear warrants had been issued for defendant in October 2022 and April 2023. There was also evidence from which it could be concluded that defendant is not capable of following court orders as evidenced by the fact that he was on probation at the time of this alleged offense. As to the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by defendant's release, the evidence showed that, in stabbing a stranger at a public train station, defendant's actions (as the State put it) "were very concerning for public safety" and "pose a significant threat to the safety of any person in the community in general *** as well as the named victim."

¶ 22    In short, the evidence was sufficient. As such, we reject defendant's claim that the State did not offer any evidence or explanation as to why no conditions of release could mitigate defendant's alleged dangerousness.

¶ 23                                  B. Written Finding

¶ 24    Defendant also argues that the trial court did not make a clear record for appeal by entering a written finding summarizing its reasons why no conditions of release could mitigate his alleged dangerousness. See 725 ILCS 5/110-6.1(h)(1) (West 2022). According to defendant, the trial court's "quick notation" that he had been on probation and was homeless does not rise to the standard set by the statute. In support of this argument, defendant relies principally on *People v. Stock*, 2023 IL App (1st) 231753.

¶ 25    In *Stock*, the trial court ordered that the defendant be detained pending trial and entered a written order. In the space provided on the form to describe why no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community,

the court simply described the charged offense, writing, "[t]he defendant shot a firearm at the complaining witness." *Stock*, 2023 IL App (1st) 231753, ¶¶ 8, 20. On appeal, the reviewing court held that this explanation was insufficient, reasoning that "[i]f the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Stock*, 2023 IL App (1st) 231753, ¶¶ 18, 20. Defendant argues that this case is similar to *Stock*. We disagree. First, in Stock, the court found that "the trial court's oral pronouncement did not contain any such reasoning, either." *Stock*, 2023 IL App (1st) 231753, ¶ 20. Second, in this case, the trial court did more than rely on the fact that a crime of violence had been committed. Its written order provided that less restrictive conditions would not assure safety to the community based on the following: "[o]n probation—failed to comply with terms—homeless so EHM unavailable."

¶ 26 Moreover, in *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19, we held that in assessing the sufficiency of a trial court's findings, its written findings must be read in conjunction with its oral pronouncements. *Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19. Turning to the present case, in pronouncing its decision, the trial court stated that it considered the dangerousness factors in section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2022)), including the nature and circumstances of the offenses charged, defendant's history and characteristics, and his probation status. These are many of the same factors that the court considers in assessing whether a specific threat could be mitigated through the imposition of conditions of pretrial release. Compare 725 ILCS 5/110-6.1(g) (West 2022) (listing factors to be considered in determining dangerousness) with 725 ILCS 5/110-5(a) (West 2022) (listing factors trial court is to consider in determining which conditions of pretrial release will reasonably ensure the safety of any person or the community). In particular, the court summarized the charges against defendant. It then noted

that defendant's criminal history includes a conviction of attempt (first degree murder) for which he received a sentence of incarceration. The court considered that defendant was on probation for aggravated battery to a police officer at the time he allegedly committed the offenses at issue and that defendant possessed a weapon while allegedly committing the offenses with which he was charged. The court described defendant's alleged actions as "a random attack on an unknown individual *** in a public place" and concluded that "the public at large is endangered by this [d]efendant's presence out of custody." The court then concluded that defendant posed "a real and present threat to the community based on the specific articulable facts from the record" and that "no condition or combination of conditions of pretrial release can mitigate the real and present danger, threat posed by this [d]efendant, and that no less restrictive conditions would avoid the real and present threat posed by *** [d]efendant." The court based its conclusion "on the fact that [defendant] was on probation at this time, being supervised on probation, and he still committed these offenses, or is alleged to have committed these offenses." As noted above, in its written findings, the court wrote that less restrictive conditions would not assure safety to the community because defendant was "[o]n probation—failed to comply with terms—homeless so EHM unavailable."

¶ 27    Considering the trial court's written findings in conjunction with its oral pronouncements, we find that the purposes of the writing requirement were satisfied. The trial court's oral ruling was explicit and individualized, and read together with its written findings, was sufficient to apprise defendant of the reasons for its ruling and to accommodate review under the Act. Consequently, we find no reason to disturb the trial court's decision on the basis that the trial court's written findings were insufficient.

¶ 28                                 C. Homelessness

¶ 29    Finally, defendant contends that the trial court erroneously held that he could not be released on electronic home monitoring because he is homeless. According to defendant, it is "factually inaccurate" that electronic home monitoring cannot be arranged for him. He notes that he had been working with jail personnel on housing or shelter options if released. He also contends that it is contrary to the purpose of the Act because the inability of a defendant to pay for a condition of release may not be used as a justification for pretrial detention. See 725 ILCS 5/110-5(e) (West 2022). Defendant therefore argues that his inability to pay for housing or electronic home monitoring is insufficient to order detention. Defendant further asserts that the State never discussed electronic home monitoring. Defendant requests a remand for the court to reconsider the conditions of release as required by the Act, including electronic home monitoring.

¶ 30    We agree with defendant that his inability to pay is not a factor in ruling out electronic home monitoring. 725 ILCS 5/110-5(e) (West 2022). However, we read nothing in the trial court's order or in the hearing transcript that supports defendant's claim that his inability to pay was the impetus for concluding that electronic home monitoring would not to be feasible. We also agree with defendant that his status as unhoused should not automatically rule out electronic home monitoring. These points aside, however, and as set forth above, the record reveals that the State, although not specifically addressing electronic home monitoring by name, referenced various reasons why conditions of release would not work in this case. The State cited defendant's prior criminal history. It discussed the fact that defendant was on probation for aggravated battery to a peace officer at the time of the instant offenses. The State noted that failure-to-appear warrants had been issued for defendant in October 2022 and April 2023. The State argued that defendant's background demonstrated that he was not capable of following court orders. The State also asserted that defendant's actions raised community safety concerns as he stabbed a stranger in a public train

station. The trial court had these reasons before it in concluding that the State proved by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on specific articulable facts of the case. Considering the record before us, we cannot say that the trial court's factual finding is against the manifest weight of the evidence. Moreover, based on the trial court's factual findings, we conclude that its order denying defendant pretrial release did not constitute an abuse of discretion.

¶ 31                                    IV. CONCLUSION

¶ 32     For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 33     Affirmed. Mandate to issue *instanter.*